### SANDWICH.

Under the Statute of 1839, c. 42, " concerning elections," an election made at a second balloting, at which the poll is kept open after sunset, is void.

Where the cases of two members, voted for at the same balloting, stood upon the same ground, the fact that one of them was too sick to attend to, or even be informed of, the petition against their election, did not prevent the committee from hearing and deciding the cases of both.

Pay allowed to members whose seats were vacated, and expenses of sickness also to one of them.

THE petition in this case, (referred to the committee on elections, February 10th,) was very brief, and is substantially copied in the following report,[1] made on the 17th of February :—

" The committee on elections, to whom was referred[2] the petition of William E. Boyden and sixty others, citizens of Sandwich, against the right of Benjamin Bourne and Asahel Cobb, the sitting members from that town, to seats in this house, submit the following report :—The ground, upon which the petitioners in this case ask that the seats of the sitting members may be vacated, is, that ' they were chosen after sunset on the day of election, and of consequence, in violation of the law of the commonwealth.'

Soon after this petition was referred to them, the committee gave notice to the member who presented it, of their readiness to hear the parties, and on Thursday last, Mr. Joseph Nye, one of the petitioners, and acting in their behalf, appeared before the committee. On that day, also, notice of the intention of the committee to proceed to a hearing was given to Mr. Bourne, one of the sitting members. No notice was given to Mr. Cobb, for reasons that will appear hereafter. Mr. Bourne was present before the committee.

It will be seen, that the petition simply states, that the sitting members ' were chosen after sunset, in violation of the law,' without setting forth whether the election was upon a first or a second balloting. As the third section of the law of 1839, concerning elections, in the provisions touching this elec-

---

[1] 66 J. H. 289.　　　　[2] Same, 223.

tion, relates only to the second and subsequent ballotings, the petition upon its face would not state a case for unseating these members, were it not for the general allegation that they were chosen ' in violation of law.' Under this specification, the petitioners introduced as a witness the said Joseph Nye, and by his testimony it appeared, that the meeting for the choice of representatives to the general court, and for the purposes of the general election in the commonwealth, was holden in Sandwich on the thirteenth day of November last; that one unsuccessful balloting for said representatives was had, the sitting members then wanting some twenty or more votes of an election ; that a second balloting was then had, at which these members had a small majority of the votes cast; that in this second balloting the poll was opened just after sunset, and kept open nearly two hours, being closed between seven and eight o'clock in the evening; and thus that all the balloting was after sunset.

Mr. Bourne offered no evidence to the committee. He, however, asked for delay to send to Sandwich. But as he did not state what additional fact he would thus prove, or what statement of this witness, excepting that the polls were opened as well as kept open after sunset, he would disprove, the committee, not deeming this exception material, did not grant the request. Mr. Bourne neither admitted nor denied that the poll was kept open after sunset, leaving the petitioners to prove their case.

It also appeared that Mr. Cobb, the other sitting member, has been for some time dangerously sick, confined to his room and bed, and wholly unable to attend to any business. It has not therefore been thought proper by his friends and attendants, to mention the subject of this petition to him, and he is not aware, as your committee are informed, that any such petition has been presented. Mr. Bourne expressed a strong desire, that no action should be had until Mr. Cobb could be apprised of it, and expressed a hope that he could converse with him on the subject on that or the next day. The committee unanimously decided to postpone further proceedings

till Friday afternoon. Mr. Bourne and Mr. Nye then again appeared, and it was ascertained that the friends of Mr. Cobb did not deem it prudent to name the subject to him, although he was then somewhat better. It was hoped by them, that he might be able next week to attend to this matter, though there is little prospect that he will be able to appear before the committee or in the house during the session.

Under these circumstances the committee were embarrassed, as to the proper course to be pursued. On the one hand, they did not wish to decide upon a matter of so grave importance, without a full hearing of the party interested. On the other, they were impressed with the necessity of deciding cases like this at the earliest possible time, consistent with a due regard to the rights of all concerned. In view of this latter consideration, they have determined to submit their report to the house, without delay on Mr. Cobb's account; stating the fact that he has not been either personally present or represented before them.

So far as there is any evidence before the committee, it appears that both the sitting members were elected upon *one* and a *second* balloting, a previous one having resulted in no choice; that at this balloting the poll was kept open after sunset, in contravention of the provisions of the third section of the act of 1839, c. 42, entitled ' an act concerning elections.' Upon this ground, therefore, they submit the following order:

Ordered, That the seats of Benjamin Bourne and Asahel Cobb, the sitting members of this house from the town of Sandwich, be, and they hereby are, declared vacant."

The foregoing report was agreed to, and the seats of those gentlemen declared vacant, on the 21st of February, by yeas, 153, nays, 129.[1]

On the succeeding day, the pay of Messrs. Bourne and Cobb was ordered to be made up to and including that day.[2]

An additional allowance of one hundred dollars was afterwards made to Mr. Cobb, in consideration of the expenses of his sickness, by the resolve of 1844, c. 71.[3]

[1] 66 J. H. 315.        [2] Same, 316, 319.        [3] Same, 322.